UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DAVID H. JOHNSTON,<br><br>    Plaintiff,<br><br>  vs.<br><br>ROBERT DOOLEY, WARDEN, MIKE DURFEE STATE PRISON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; DENNIS KAEMINGK, SECRETARY OF CORRECTIONS FOR THE STATE OF SOUTH DAKOTA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; MARTY JACKLEY, ATTORNEY GENERAL FOR THE STATE OF SOUTH DAKOTA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; LARRY LOVERN, BROWN COUNTY STATES ATTORNEY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; ED LIGHTENBERG, DIRECTOR OF THE BOARD OF PARDONS AND PAROLES IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; BRAD LEWANDOWSKI, PAROLE OFFICER FOR THE SOUTH DAKOTA BOARD OF PARDONS AND PAROLES, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND CHRIS GROSS, POLICE DETECTIVE FOR THE ABERDEEN POLICE DEPARTMENT, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>    Defendants. | 4:15-CV-04126-LLP<br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

Plaintiff, David H. Johnston ("Johnston"), is an inmate at the Mike Durfee State Prison ("MDSP") in Springfield, South Dakota. He brings this civil lawsuit seeking damages against the defendants pursuant to 42 U.S.C. § 1983, alleging

they have violated his civil rights in various ways. Mr. Johnston has been granted *in forma pauperis* status and has paid his initial partial filing fee of $10.96 as the court ordered.

The pending matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the October 16, 2014 standing order of the Honorable Karen E. Schreier, district judge. The court has "screened" Mr. Johnston's complaint pursuant to 28 U.S.C. § 1915(e) and respectfully recommends that Mr. Johnston's complaint be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) (ii) & (iii) and 1915A (b)(1) & (2).

## FACTS

**A.     Mr. Johnston's 2014 Lawsuit and Its Disposition**

Last year, Mr. Johnston filed suit against Warden Robert Dooley and Secretary of Corrections Robert Kaemingk, both in their official capacities. See Johnston v. Dooley, 4:14-cv-04182-LLP, Docket 1, p. 2, ¶ A.3 (D.S.D.). In his prior lawsuit, he alleged the defendants had unlawfully detained him in violation of his Eighth Amendment right against cruel and unusual punishment. Id., p. 4, ¶ C.2.

In his prior case, Mr. Johnston asserted the defendants deprived him of his freedom beyond his sentence termination date. Id. at p.4, ¶ C.3. His theory was as follows: In March, 1998 he was sentenced to fifteen years' imprisonment with five years suspended for the crime of having sexual contact with a child. Id.; see also id. at Docket No. 10-1. He was sentenced under the "new"[1] law, which did

---

[1] The difference between the "new" and "old" sentencing law in South Dakota is described in more detail in the DISCUSSION section of this Report and Recommendation.

2

not provide for good time credits, but which, according to Mr. Johnston, vested jurisdiction with the sentencing court for a period of one year after the date of conviction.  Id.  According to Mr. Johnston, one year after his conviction jurisdiction transferred to the Board of Pardons and Paroles.  Id.

Mr. Johnson asserted he was released on parole in March, 2003 but later was found by the Board of Pardons and Paroles to have violated his parole.  Id.  Specifically, in March, 2010, Mr. Johnston stated he failed a polygraph test which he asserted was a condition placed on his parole by the Board of Pardons and Parole.[2]  Id.  Mr. Johnston asserted the Board did not have jurisdiction to place this condition on his parole because (1) it was not a condition placed by the original sentencing court[3] and (2) he should have been sentenced pursuant to the "old" sentencing law in any event because the "old" law pertained to "any crime committed on or before July 1, 1996 and the date of the crime not the date of conviction was to be the deciding factor to which guideline was to be followed."  Id. at p. 5.  It appears the crime Mr. Johnston committed occurred partially before July 1, 1996 and partially after that date.  See id. at Docket No. 10-1.

In his prior lawsuit, Mr. Johnston asserted if the Board of Pardons and Paroles had corrected his sentencing to the "old" method, his "flat time" date would

---

[2] Although Mr. Johnston asserts his parole was revoked for failing a polygraph test, other documents submitted by Mr. Johnston in his 2014 case indicate that his parole was revoked because he committed a new crime of sexual contact with a child in December, 2009.  See Johnston v. Dooley, 4:14-cv-04182-LLP, Docket No. 10-1 at p. 2.

[3] This position has been rejected by the Eighth Circuit.  The South Dakota Board of Pardons and Parole may impose conditions on a prisoner being paroled in addition to the conditions imposed by the sentencing court so long as those additional conditions are reasonable and not inconsistent with those mandated by the sentencing court.  Figg v. Russell, 433 F.3d 593, 598 (8th Cir. 2006).

3

have been August, 2004 and he would have been released to begin the suspended portion of his sentence.  Id.  Mr. Johnston further asserted the Board of Pardons and Paroles never had authority to change the conditions imposed by the sentencing court and therefore, the revocation of his parole because of a failed polygraph violated his Eighth Amendment right to be free from cruel and unusual punishment.  Id. at pp. 5-6 (but see footnote 3).  Mr. Johnston asserted his prison sentence had been extended beyond his sentence completion date and that his continued detention is unlawful.  Id. at p. 6.

In the "Request for Relief" section of his prior complaint (Docket 1, p. 6, ¶ R) Mr. Johnston requested monetary damages only.  He requested "that the state be ordered to pay him $50,000 per year and a pro-rated amount of $4,500.00 a month for any extra months from August of 2004 to August of 2013."  Id.

Mr. Johnston's prior lawsuit was dismissed on this court's recommendation because of the rule in Heck v. Humphrey, 512 U.S. 477 (1994).  See Johnston v. Dooley, 4:14-04182-LLP, Docket Nos. 9 and 11.

**B.    Mr. Johnston's Current Complaint**

Mr. Johnston's current complaint also alleges his constitutional rights have been violated and he seeks exclusively money damages as his remedy pursuant to 42 U.S.C. § 1983.  See Docket No. 1.  He names the following defendants in addition to the original 2014 defendants Dooley and Kaemingk:  Marty Jackley, Attorney General for the state of South Dakota; Larry Lovern, Brown County States Attorney; Ed Lightenberg, Director of the South Dakota Board of Pardons and Paroles; Brad Lewandowski, Parole Officer for the state of South Dakota; and Chris Gross, police detective for the city of Aberdeen Police Department.  Id.

4

Mr. Johnston expands the constitutional rights he believes have been violated in his current complaint as compared to his 2014 complaint.  Id.

Mr. Johnston's 2015 complaint is premised on the exact same arguments as his 2014 complaint:  he believes he is being illegally detained after his prison sentence expired and he believes the Board of Pardons and Paroles was without authority to require him to take polygraph tests as a condition of his parole.  Id. For all the same reasons expressed in this court's report and recommendation in Mr. Johnston's 2014 case, this court again recommends dismissal of Mr. Johnston's current complaint.

## DISCUSSION

**A.     Rule 12(b)(6) and 28 U.S.C. § 1915 Screening Standards.**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii))  and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon which relief may be granted."  This standard is the same standard as is used to determine whether a complaint satisfies the standards of FED. R. CIV. P. 12(b)(6). Kane v. Lancaster County Dept. of Corrections, 960 F.Supp. 219 (D. Neb. 1997). "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded,   . . . to less stringent standards than formal pleadings drafted by lawyers.' " Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).  "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within

5

the proper framework." Id. at 544 (quoting Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)).

The United States Supreme Court addressed the standard that district courts are to apply to Rule 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

The law predating Twombly and Iqbal held that under Rule 12(b)(6), the court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). However, Conley's "no set of facts" language was overruled in Twombly. Twombly, 550 U.S. at 563. Instead, the Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face." Id. at 570 (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)). A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). The Court also imposed a "plausibility standard," holding that a claim "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim. Id. at 556. The plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. Id.

6

There are two "working principles" from Twombly and Iqbal.  Iqbal, 556 U.S. at 678.  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint.  Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  It is through the lens of Twombly and Iqbal that the court examines the sufficiency of Johnston's Complaint to determine whether it survives

screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)) and 1915A(b)(1). With these standards in mind, Johnston's Complaint has been carefully considered.

**B.     Johnston's Complaint Fails to State a Claim Upon Which Relief May Be Granted**.

Mr. Johnston's complaint does not state a claim upon which relief may be granted. Mr. Johnston's claim is that the named state officials have wrongly detained him longer than his sentence allowed and that because of his allegedly wrongful detention, he should be paid money damages. However, this claim for money damages, like the claim in his 2014 complaint, is prohibited by the ruling in <u>Heck v. Humphrey</u>.

### 1.     The Substance of Mr. Johnston's Complaint

Mr. Johnston asserts he was wrongly sentenced under the "new" South Dakota sentencing law instead of the "old" sentencing law and that as a result, the South Dakota Board of Pardons and Paroles was allowed to impose conditions on his suspended sentence/parole which ultimately led to the wrongful revocation of his parole in 2010. Mr. Johnston claims that because his parole was wrongfully revoked, his incarceration has been extended longer than it should have been and he is entitled to money damages.

As background to this claim, a brief review of the "old" and "new" South Dakota sentencing law is provided. The South Dakota legislature revised South Dakota's parole laws effective July 1, 1996. The "new" parole system applies to those sentenced to prison for crimes committed after that date. <u>See</u> SDCL § 24-15A-3. The "new" parole system mandates that inmates be released on parole, without a hearing before the parole board, if the inmate is in compliance with his "program directive," has agreed to the conditions of supervision, and has an

8

approved release plan. SDCL § 24-15A-38. Both "old" system and "new" system inmates receive program directives with which they are expected to comply. Prisoners sentenced under the "old" system, however, still must appear before the parole board even if they are in compliance with their program directives in order to be granted parole. SDCL § 24-15-1 and 8.

Another contrast between the "old" and "new" systems, however, is prisoners sentenced under the "new" system are not entitled to a reduction of their sentences for good conduct. SDCL § 24-15A-3. Under the "old" parole system prisoners received statutory reductions from their sentences for good conduct. SDCL § 24-5-1. Good time credits were calculated according to the length of the prisoner's sentence, and reduced the amount of time from the sentence if the credits were not lost. Id.

The South Dakota Supreme Court and the Eighth Circuit have both addressed the constitutionality of applying two different parole systems to inmates within the same penal system. "[T]he inmates' equal protection rights were not violated by the Board's application of the old parole laws to those sentenced for crimes committed before the effective date of SDCL 24-15A-38." Bergee v. South Dakota Board of Pardons and Paroles, 608 N.W.2d 636, 644 (S.D. 2000). Likewise, "[l]egislatures constantly re-evaluate and change the substance of their penal statutes. Implementing these changes necessitates the establishment of an effective date, and it is incumbent upon the legislature to determine the point in time when new statutes take effect. It is not irrational for a state to revise its penal laws prospectively, thereby avoiding re-adjudication of all sentences under

the prior law." Thompson v. Missouri Board of Parole, 929 F.2d 396, 400 (8th Cir. 1991) (citations omitted).

It appears that Mr. Johnston presented to the South Dakota Board of Pardons and Paroles his claim that had he been wrongly sentenced under the "new" law and should have been sentenced under the "old" law.  The Parole Board issued a decision on that claim on September 18, 2014.  See Johnston v. Dooley, 4:14-cv-04182-LLP at Docket No. 10-1.  That decision clarifies the facts in Mr. Johnston's case.

Mr. Johnston's 1998 conviction stemmed from a charging document that asserted he had sexual contact with a child between May 1, 1996 and June 9, 1997.  Id.  Thus, some of the criminal conduct took place before the advent of the "new" law and some of the conduct took place after the "new" law took effect.  Id. Originally, officials applied the "new" law to Mr. Johnston's sentence and calculated the date his sentence would expire as February 3, 2013.  Id. at p. 1. Mr. Johnston was released on parole on February 5, 2003.  Id. at p. 2.  He then committed a new crime of sexual contact with a minor in December, 2009, for which his parole was revoked in April, 2010.  Id.  He was sentenced on this latter crime three years after having been charged, on August 19, 2013, and he received a sentence of 12 years' imprisonment, to run consecutive to his sentence on the 1998 conviction.  Id. at pp. 3-4.

Addressing Mr. Johnston's argument that the sentence for his first conviction should have been calculated under the "old" *not* the "new" law, the Parole Board applied the rule of lenity and agreed that Mr. Johnston's 1998 sentence should have been calculated under the "old" law.  Id.  Recalculating Mr.

10

Johnston's sentence under the "old" law, the Board determined that Mr. Johnston's 1998 sentence expired on August 3, 2009. Id. at p. 3. Accordingly, when he committed the new crime of sexual contact with a child again in December, 2009, Mr. Johnston was no longer on parole because his sentence had expired. Id.

Mr. Johnston requested that the Board hold that his 2013 sentence be determined to have begun running in August 2009, the date when his sentence on his first offense expired. Id. at p. 4. The Board rejected this argument, noting that Mr. Johnston had not yet committed his second crime in August 2009 because that second crime occurred in December 2009. Id. Thus, the Board refused to begin the running of his second sentence as of a date when the crime for which that sentence was imposed had not yet occurred. Id. The Board determined that the appropriate start date for the running of the sentence on Mr. Johnston's second conviction was the date of his sentencing for that conviction: August 19, 2013. Id.

Reading the September 18, 2014 decision from the Parole Board together with Mr. Johnston's complaint in this matter, it appears Mr. Johnston is complaining about the approximately three years (from April 2010 to August 19, 2013) during which he was in custody, but for which he has received no credit against any sentence. And it also appears to this court that Mr. Johnston is right, in part, about this matter. The three years in question, had Mr. Johnston's sentence been properly calculated, would probably have been credited against his 2013 sentence. Because this three-year period was instead erroneously credited against the 1998 sentence (which had already expired), it was not credited against

11

his 2013 sentence. Mr. Johnston, in essence, served three years on a nonexistent sentence. Had his 1998 sentence been calculated correctly from the beginning, he probably would have received credit against his 2013 sentence for those three years he spent in custody from 2010 to 2013. Perhaps he would not even have been in custody, pretrial, during that time had his original sentence been correctly calculated. But these matters are not for this court to determine in the present vehicle of Mr. Johnston's § 1983 complaint for money damages.

### 2. Mr. Johnston's Complaint is (Still) Barred by Heck

Mr. Johnston's federal claim for damages is barred by Heck v. Humphrey, 512 U.S. 477 (1994). "When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500, (1973). Mr. Johnston's claim that he is or was detained longer than his sentence allowed is clearly a challenge to the "very fact or duration" of his imprisonment. In essence, he is claiming that his release date on his 2013 conviction should be three years earlier than it is calculated to be. For such a claim, Mr. Johnston's sole remedy is a writ of habeas corpus.

In Heck, the Supreme Court held that if a judgment favorable to a prisoner in a § 1983 lawsuit would necessarily imply the invalidity of the prisoner's conviction *or the length of the prisoner's sentence*, then a § 1983 action for damages does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state

tribunal, or called into question by the issuance of a federal habeas writ. Heck, 512 U.S. at 486-87.

The facts of Heck, are as follows: Roy Heck had been convicted in Indiana state court of voluntary manslaughter for the death of his wife and sentenced to 15 years' imprisonment. Id. at 478. While a direct appeal of his state court conviction was pending, Heck filed a damages action under 42 U.S.C. § 1983, alleging that the prosecutors and police in his case violated his constitutional rights under color of state law by engaging in an unlawful, unreasonable and arbitrary investigation, knowingly destroying exculpatory evidence, and using an illegal voice identification procedure at trial. Id. at 478-79. Heck did not seek any action from the district court which would have invalidated his conviction or caused him to be released from prison. Id. at 479.

The Court began its analysis by noting that "§ 1983 creates a species of tort liability." Id. at 483. It then stated that Heck's claim in this case was most closely analogous to a common-law claim for malicious prosecution. Id. at 484. One element of malicious prosecution that a plaintiff must prove is that the prior criminal proceeding was resolved in favor of the plaintiff. Id. This, the court noted, "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Id. (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts, § 28:5, at 24 (1991)).

13

The Court also noted that allowing a convicted defendant to bring a money action for damages based on the same prosecution would be tantamount to allowing a collateral attack on the criminal judgment. Id. at 485. The Court held "that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" and that this principle applied equally to § 1983 actions. Id. Thus, in order to avoid the tension between the finality of a criminal judgment and a civil action for damages arising out of that criminal prosecution, the Court held that a § 1983 plaintiff who seeks damages arising out of an allegedly unconstitutional conviction or imprisonment or for any other injury caused by actions whose unlawfulness would render a criminal judgment invalid, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. This is what is called the "favorable-termination rule" of Heck. See Newmy v. Johnson, 758 F.3d 1008, 1009 (8th Cir. 2014). "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." Heck, 512 U.S. at 487. The holding in Heck is directly on point with Mr. Johnston's claims arising out of his alleged wrongful extended incarceration.

This court previously recommended that Mr. Johnston's 2014 complaint be dismissed based on the holding in Heck because Mr. Johnston did not satisfy the "favorable-termination rule" of Heck—that is, he failed to show or allege that his underlying incarceration or conviction had been reversed, invalidated, expunged, or called into question in any way. See Johnston v. Dooley, 4:14-04182-LLP at

14

Docket No. 9.  The only material difference between the 2014 complaint and the 2015 complaint, as far as the Heck analysis goes, is that in the 2014 case, Mr. Johnston had at that time an active, pending petition for habeas relief in state court.  Now, according to Mr. Johnston's current complaint, that habeas petition is no longer pending, but has been dismissed by the state court.  See Docket No. 1. at p. 5, ¶ B(a)-(g).  Since the state court dismissed Mr. Johnston's state habeas petition, this court concludes that the state court found the petition to be without merit, either substantively or procedurally.  Therefore, in this 2015 case, just like in the 2014 case, Mr. Johnston's plea for money damages under § 1983 must fail because he has not and cannot show that his underlying imprisonment and/or conviction have been reversed, expunged, invalidated, or otherwise called into question.

It is important to note, in this regard, that Mr. Johnston is currently in custody on his 2013 conviction.  This must be so because his 1998 conviction has been determined to have expired.  See Johnson v. Dooley, 4:14-cv-04182-LLP Docket No. 10-1 at p. 3.  Mr. Johnston received a sentence on his 2013 conviction of 12 years' imprisonment.  Id.  Thus, his 2013 sentence would not expire until 2025.  If Mr. Johnston were to be given credit for the "missing" three years, Mr. Johnston would still be validly incarcerated until 2022.  In no way, then, can the court say that Mr. Johnston's current detention is illegal in this year of 2015.

Mr. Johnston's circumstances are akin to a § 1983 plaintiff who brings a claim covered by Heck, but is not able to satisfy the "favorable-termination rule" because he can no longer bring a habeas action to remedy his sentence because he is no longer in custody.  Though Mr. Johnston *is* in custody, he is no longer in

15

custody on his 1998 conviction.  It is the conviction from 1998 about which he complains his constitutional rights were violated.  See Docket No. 1.  It is on the 1998 conviction that he complains he served three years' incarceration beyond the date his sentence expired.

About this situation, the Heck Court stated:  "We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.  Heck, 512 U.S. at 490 n.10.  Although the circuit courts are split on this question, the Eighth Circuit has made its position clear:  even though habeas relief may no longer be available to a plaintiff, a § 1983 suit for damages is barred nonetheless—every § 1983 plaintiff seeking money damages for the fact of his incarceration must satisfy the "favorable-termination rule."  Newmy, 758 F.3d at 1011-12.  This is so even though application of the "favorable-termination rule" may leave a particular inmate who has been wronged without a damages remedy.  Id. at 1012.  Whether a decision by a state officer, court, or agency satisfies the "favorable-termination rule" is a question of federal law.  Wilson v. Lawrence Co., Mo., 154 F.3d 757, 760 (8th Cir. 1998).

It is clear that the September 18, 2014 decision of the Parole Board in Mr. Johnston's case does not satisfy the "favorable-termination rule."  The Heck Court was very specific about the types of decisions and the types of tribunals that could satisfy the "favorable-termination rule."  Heck, 512 U.S. at 486-87.  There are only four:

    1.     a reversal on direct appeal by an appellate court;

    2.     an expungement by executive order;

    3.     a declaration of invalidity by a state tribunal authorized to make such determination; or

    4.     a federal court's issuance of a writ of habeas corpus.

Id. Clearly, no decision fitting items 1-2 or 4 have been issued concerning Mr. Johnston's 1998 conviction and sentence. This court concludes that the Parole Board's decision in Mr. Johnston's case also does not satisfy the third circumstance described above.

      In Wilson, 154 F.3d at 760-61, the Eighth Circuit held that a § 1983 plaintiff who received a pardon from the state governor satisfied the "favorable-termination rule" and could seek damages. However, the opposite conclusion was reached in Marlowe v. Fabian, 676 F.3d 743 (8th Cir. 2012). Marlowe, a § 1983 plaintiff, argued he satisfied the "favorable-termination rule" when a state appellate court remanded an appeal of the denial of his state habeas petition by the trial court. Id. at 744-47. The Eighth Circuit held Marlowe failed to satisfy the "favorable-termination rule" because the opinion of the appellate court issuing the remand did not reverse, expunge, invalidate or impugn his incarceration. Id. at 747.

      Here, similarly, the Parole Board decision did not reverse Mr. Johnston's conviction, expunge his record, invalidate his conviction, or impugn his incarceration. The Parole Board's decision merely rectified its prior calculation of the expiration of Mr. Johnston's 1998 sentence. Since a major difference between the calculation of sentences under the "old" and "new" systems concerns the

application of good conduct credits against a prisoner's sentence, the court assumes the Parole Board reached its decision by applying such credits against Mr. Johnston's 1998 sentence.  See SDCL § 24-5-1.  The Parole Board's acknowledgement that it made a mistake in calculating the expiration of Mr. Johnston's 1998 sentence does not amount to an invalidation of the underlying conviction as required by Heck.[4]  Such invalidation of a conviction of imprisonment is a necessary prerequisite to bringing a suit for money damages based on a theory of illegal detention, as already explained to Mr. Johnston when this court recommended dismissal of his 2014 complaint.  See Heck, 512 U.S. at 486-87.  Again, Mr. Johnston has not made the requisite showing required under Heck, so this court recommends dismissal of his 2015 complaint.

**C.     Mr. Johnston's Filing Fee**

If Mr. Johnston's suit had been allowed to proceed and he prevailed on the merits, he would have recovered the filing fee.  Both the legislative history and the case law interpreting the Prison Litigation Reform Act, however, instruct that unsuccessful prison litigants, like any other litigants, do not get their filing fees back if their cases are dismissed.  That Mr. Johnston's case is dismissed pursuant to the screening procedures of § 1915 does not negate his obligation to pay the fee.  In Re: Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997).  The obligation to pay a filing fee accrues the moment a plaintiff files his complaint with the court, and it cannot be avoided merely because the case is eventually

---

[4] The South Dakota Board of Pardons and Parole has many functions and duties, including quasi-judicial functions, but it does not have the power to invalidate a conviction or sentence issued by a state circuit court judge.  See SDCL ch. 24-5, 24-13, 24-15, 24-15A and ARSD ch. 17:60:01 through 17:60:12.

dismissed as frivolous. <u>Anderson v. Sundquist</u>, 1 F. Supp. 2d 828, 830 n. 5 (W.D. Tenn. 1998). One of the purposes of the Prison Litigation Reform Act is to:

> require the prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the provision will deter frivolous inmate lawsuits. The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law abiding Americans must make: Is the lawsuit worth the price?

<u>Roller v. Gunn,</u> 107 F.3d 227, 231 (4th Cir. 1997) (quoting 141 Cong. Rec. at S7526 (May 25, 1995). <u>See also</u> <u>In Re: Tyler</u>, 110 F.3d 528, 529-30 (8th Cir. 1997) (prisoner will be assessed full filing fee even if his case is dismissed because "the PRLA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal."). Mr. Johnston remains responsible for the $350.00 filing fee.

Mr. Johnston is advised that **the dismissal of this lawsuit will be considered a second "strike" for purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g) provides:**

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## CONCLUSION

Based on the facts, law and analysis above, this court respectfully recommends that David H. Johnston's 2015 complaint (Docket 1) be DISMISSED without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) (ii) and (iii) and 1915A(b)(1) & (2). It is

further recommended that, if the district court adopts this magistrate judge's recommendation, Mr. Johnston be assessed a strike, his second, under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g).

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED October 13, 2015.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge